Lloyd SCHADE, Appellant, Cross–Appellee,

v.

Cecil ANDRUS, Secretary of the Interior, Appellee, Cross–Appellant.

No. 78–3700, 78–3703.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 1980.

Decided Feb. 2, 1981.

Paul W. Waggoner, Anchorage, Alaska, for Schade.

Peter R. Steenland, Jr., Washington, D.C., argued for Andrus; Richard D. Kibby, Alexander O. Bryner, Anchorage, Alaska, on brief.

Before WALLACE, HUG and SCHROE-DER, Circuit Judges.

SCHROEDER, Circuit Judge:

This case arose under 43 U.S.C. § 687a which provides that one in possession of public land in Alaska can purchase up to 80 acres for $2.50 an acre if the land is "needed" in the prosecution of productive industry.[1]

In 1964, Lloyd Schade applied to purchase 80 acres on which he was operating a slaughterhouse. The Anchorage District & Land Office of the Department of Interior originally approved the purchase of 60 acres. After a series of administrative hearings and appeals the final administrative decision, by the U. S. Department of Interior Office of Hearings and Appeals, approved only 30 acres. Strong dissents by two members of the Hearings & Appeals board reflected their view that Schade was entitled to an additional 22½ acres. That acreage comprised the watershed area for the spring which Schade used as the source of pure water required for the slaughterhouse operation.

Schade sought review in district court under 28 U.S.C. §§ 1331 and 1361. Schade claimed that he was entitled on summary judgment to the full 60 acres originally awarded by the land office or, in the alternative, that he was at least entitled to the 22½ acre watershed. The district court held that Schade was not entitled to the full 60 acres, but that he was entitled to the 22½ acres, for a total of 52½ acres. Both the government and Schade appealed, and this Court has jurisdiction under 28 U.S.C. § 1291.

■ The issue in the government's appeal as to the 22½ acres is the proper interpretation of the section 687a requirement that land must be "needed" in the prosecution of productive industry.

---

1. Congress repealed the provision in 1976 but the repeal will not take effect until 1986. It was formerly numbered as 48 U.S.C. § 461 and at all times pertinent to this case provided as follows:

   Any citizen of the United States twenty–one years of age, or any association of such citizens, or any corporation . . . in the possession of and occupying public lands in Alaska in good faith for the purposes of trade, manufacture, or other productive industry, may each purchase one claim only not exceeding eighty acres of such land for any one person, association, or corporation, at $2.50 per acre, upon submission of proof that said area embraces improvements of the claimant and is needed in the prosecution of such trade, manufacture, or other productive industry . . . .

The specific 22½ acre watershed in question supplies water for the slaughterhouse and was sought by Schade in order to prevent inconsistent usages which might cause contamination of the water supply. It is not disputed that the slaughterhouse is a productive industry and that if contamination were to occur, the slaughterhouse operation could not continue.

It would appear that the statute's requirement of necessity was satisfied. The Interior Department's appeals board here held, however, that all of the land was required to be "actively used" and that since no actual construction or activity was planned on the 22½ acres, Schade could not purchase it.[2]

While courts generally defer to agency interpretations of statutory requirements when those interpretations are reasonable, *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Comm'n*, 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968); *Baker v. United States*, 613 F.2d 224, 226 (9th Cir. 1980), such deference is not automatic and is inappropriate when the agency imposes requirements which are at odds with statutory provisions. *See Baker v. United States, supra; Marathon Oil Co. v. Kleppe*, 556 F.2d 982 (9th Cir. 1977).[3] We conclude in this case that the requirement of "active use" imposed by the agency is not only absent from the statute but far more restrictive than the statutory language would warrant.

The "active use" requirement appears to have come from two previous administrative decisions in which the Board was concerned with claims for land which was not presently needed but which might in the future be needed if other projects were undertaken.[4] Those decisions are inapposite here because at the time the application was filed, the disputed land was needed for the slaughterhouse operation already in existence. Therefore, we agree with the district court that the Board's interpretation ignores the clear language of the statute which allows the purchase of up to eighty acres of land needed in the prosecution of a productive industry. Schade, having satisfied all the requirements of the statute, is entitled to the 22½ acres.

■ On Schade's cross–appeal claiming entitlement to the 60 acres originally awarded by the land office, we are also in agreement with the district court. Schade's position is based on the fact that, when the original land office decision came down, Schade appealed from the approval of only 60 acres rather than his full 80 acre claim, while the government filed no formal appeal. He therefore argues that in the subsequent agency proceedings, he could never receive less than 60 acres. His position is contrary to the now established principle that the Secretary of the Interior has "broad plenary power over the disposition of public lands," and that throughout the appeals process, so long as legal title re-

---

**2.** Pertinent regulations of the Department of Interior require that the applicant show, inter alia, that the land "is actually used and occupied . . . and is needed in the prosecution of the enterprise." 43 C.F.R. § 2562.3(d)(1) (1979). The standard of "active use" applied by the Hearings & Appeals board is thus even higher than the regulation's standard of "actual use." Schade has depended upon a pure water supply since the inception of his slaughterhouse operation and, without it, would be out of business. This undisputed need for a pure water supply compels the conclusion that both the spring and its watershed area are integral and necessary parts of the slaughterhouse operation. In that sense, both the spring and its watershed are also used in the prosecution of the enterprise.

**3.** The Supreme Court has said that:

Reviewing courts are not obliged to stand aside and rubberstamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province, and courts would abdicate their responsibility if they did not fully review such administrative decisions.

*NLRB v. Brown*, 380 U.S. 278, 291–92, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965). *See also SEC v. Sloan*, 436 U.S. 103, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978); *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Comm'n*, 390 U.S. 261, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968).

**4.** *Golden Valley Elec. Ass'n.*, 8 IBLA 386 (1972); *Wilbur J. Erskine*, 51 I.D. 194 (1925).

mains in the government, there is continuing jurisdiction in the Department to consider all issues in land claims. *Ideal Basic Indus., Inc. v. Morton*, 542 F.2d 1364, 1367 (9th Cir. 1976); *see also Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 83 S.Ct. 379, 9 L.Ed.2d 350 (1963); *Cameron v. United States*, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659 (1920).

Affirmed.