KOZINSKI, Circuit Judge:
Congress enacted the Alaska Native Claims Settlement Act, 43 U.S.C. §§ 1601-1629a, (ANCSA) to settle the land claims of Alaska Natives and Native groups. 43 U.S.C. § 1601(a). ANCSA authorizes the Secretary of the Interior to convey certain public lands to Native groups that are incorporated under Alaska law but that do not qualify as Native villages. 43 U.S.C. § 1613(h)(2). We consider whether the Secretary’s regulations regarding the qualification of Native groups, 43 C.F.R. §§ 2653.6(a)(4), (a)(5), are consistent with the statutory definition, 43 U.S.C. § 1602(d).
Facts
In 1976 the Grouse Creek Corporation applied as a Native group for a conveyance of 6720 acres of National Forest land.[1] Under the applicable regulations, a group qualifies as a Native group only if a majority of the residents of the locality are members. The Bureau of Indian Affairs found that the Grouse Creek group did not qualify: Only eleven of thirty-one residents were members of the Grouse Creek group. The Grouse Creek group appealed, and the administrative law judge redrew the boundaries of the locality. Nonetheless, he found that the Grouse Creek group fell just short of meeting the majority requirement even within the new boundaries: Fifteen of thirty residents were members. Because less than a majority of the residents of the locality were members of the Grouse Creek group, it did not qualify as a Native group.
Critical to this determination was the Secretary’s decision to count one family of five, the Munsons, as residents of the locality but not as members of the Grouse Creek group. The Munsons are Alaska Natives enrolled in the Native Village of Eklutna. Nonetheless, they have lived in the Grouse Creek locality at all relevant times.[2]
The Grouse Creek Corporation appealed the AU’s decision to the Interior Board of Land Appeals, which affirmed. Because the IBLA concluded that, even within the more favorable boundaries, less than a majority of residents were members of the Grouse Creek group, it did not review the boundary determination.
The district court reversed. It agreed that, because the Munsons are not enrolled in the Grouse Creek locality, they could not be members of the Grouse Creek group. However, the court also held that the Mun-sons’ enrollment in another locality precluded them from being residents of the Grouse Creek locality. It therefore concluded that there were twenty-five residents, not thirty. Because fifteen out of twenty-five residents were members, the district court concluded that the members would constitute a majority of the residents if the AU’s boundaries were correct. The court remanded to allow the IBLA to consider the boundary issue.[3]
The Secretary appeals.
*457 Discussion
I
Because the district court remanded to the agency, it is not clear that we have jurisdiction over the appeal. Under 28 U.S.C. § 1291, we have jurisdiction only over appeals from final orders; in general, remand orders are not considered final. See, e.g., Eluska v. Andrus, 587 F.2d 996, 999-1001 (9th Cir.1978); see also 15 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3914, at 550-51 (1976). However, a remand order is considered final where (1) the district court conclusively resolves a separable legal issue, (2) the remand order forces the agency to apply a potentially erroneous rule which may result in a wasted proceeding, and (3) review would, as a practical matter, be foreclosed if an immediate appeal were unavailable. See Stone v. Heckler, 722 F.2d 464, 466-67 (9th Cir.1983); Kaho v. Ilchert, 765 F.2d 877, 880-81 (9th Cir.1985); Regents of Univ. of Cal. v. Heckler, 771 F.2d 1182, 1186-87 (9th Cir.1985).
The district court here invalidated the Secretary’s interpretation of the statute, conclusively resolving that separable legal issue. On remand, the IBLA was to set the locality’s boundaries and apply the district court’s interpretation to determine whether the Grouse Creek group met the majority requirement; this proceeding would be a waste if the district court’s interpretation proved erroneous. And, failure to permit immediate appeal might foreclose review altogether: Should the Secretary lose on remand, there would be no appeal, for the Secretary cannot appeal his own agency’s determinations. We therefore conclude that the order is final and appealable under 28 U.S.C. § 1291.
II
Neither the Secretary’s interpretation of the regulations nor the regulations themselves may stand if manifestly contrary to the statute. See Chevron USA, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694 (1984). However, the Secretary’s interpretation is entitled to great deference; even if we would adopt a different interpretation, we must uphold the Secretary’s as long as it is reasonable. Seldovia Native Ass’n v. Lujan, 904 F.2d 1335, 1342 (9th Cir.1990); Haynes v. United States, 891 F.2d 235, 238-39 (9th Cir.1989); see Chevron USA, Inc., 467 U.S. at 842-44, 104 S.Ct. at 2781-83.[4]
Under the regulations, the BIA must determine whether a Native group meets the majority requirement in two steps. First, it must count the members of the Native group who reside and are enrolled in the locality, 43 C.F.R. §§ 2653.6(a)(4), (a)(5); then it must count all the residents. If more than half of the residents are Native group members, the group is eligible; if half of the residents or fewer are members, it is not. Plaintiffs challenge both the regulation defining who counts toward the majority and who counts as a resident.
A. According to plaintiffs, Native groups are eligible for conveyances so long as a majority of the residents are Natives; under the Secretary’s regulations, however, Native groups are eligible only if a majority of the residents are members of the Native group seeking the conveyance. 43 C.F.R. §§ 2653.6(a)(4), (a)(5). Whether we count all Natives or members only is critical here. Twenty of thirty residents—a majority—are Natives. But only *458 fifteen residents — less than a majority— are members. This difference arises because one family of five, the Munsons, are Natives, but are not members of the Grouse Creek group.
The statute provides that:
“Native group” means any tribe, band, clan, village, community, or village association of Natives in Alaska composed of less than twenty-five Natives, who comprise a majority of the residents of the locality.
43 U.S.C. § 1602(d).
Plaintiffs argue that because the clause “who comprise a majority of the residents” modifies the word “Natives,” the statute requires that a majority of the residents be Natives and doesn’t require that a majority be members. Admittedly, the clause dangles a bit — it is not entirely clear to whom the word “who” refers. One plausible reading, however, is that the clause modifies the entire preceding phrase — “tribe, band, clan, village, community or village association of Natives” — not just the word “Natives,” thus requiring that a majority of the residents be members of the tribe, band, clan, village, community or village association that seeks the conveyance.
Even if we were to read “who comprise a majority” as modifying Natives, we would still have to rely on the preceding half of the definition in determining to which Natives it refers; the context indicates that the Natives who must comprise a majority of the residents are the twenty-five or fewer Natives who make up the tribe, band, clan, village, community or village association. It is one of these interpretations, neither of which is unreasonable, that the Secretary adopted in his regulations.
As plaintiffs point out, other sections of ANCSA do require Natives, not group members, to constitute a majority of the residents. For example, section 1610(b)(3), which determines the eligibility of certain Native villages for ANCSA benefits, requires “a majority of the residents [to be] Natives.” 43 U.S.C. § 1610(b)(3)(B). Had Congress used identical language in spelling out the criteria for Native groups, 43 U.S.C. § 1602(d), the Secretary would have been required to count all Natives toward the majority requirement. But Congress used different language here, language that is readily susceptible to the Secretary’s interpretation. If anything, Congress’ use of different language in different parts of ANCSA suggests that it meant the provisions to function differently.
The Secretary’s interpretation of 43 U.S.C. § 1602(d) makes sense. The statute takes land out of the public domain and places it in the hands of private groups. See 43 U.S.C. § 1613(h)(2). Residents who are not members will cease to have any rights to use or enjoy the transferred land. Under the plaintiffs’ construction of the statute, the Munsons would count in favor of the transfer even though they, along with the rest of the public, may lose rights as a result. Requiring the recipients of the land — the group members — to make up a majority of the residents ensures that a non-member majority is not denied access to public lands for the benefit of a group-member minority.
We have little difficulty concluding that 43 C.F.R. § 2653.6(a)(4) is not only a permissible, but a sensible, interpretation of 43 U.S.C. § 1602(d). The district court correctly concluded that the Munsons could not count toward the majority because they were not members of the Grouse Creek group.
B. Having resolved who counts toward the majority, we must now determine who is a resident of the locality. Once again we find the Munsons in the limelight. If the Munsons count as residents, there are thirty residents and the fifteen Grouse Creek group members do not make up a majority; if the Munsons do not, there are only twenty-five residents, and the fifteen Grouse Creek group members constitute a majority.
Neither the statute nor the regulations define resident. The Secretary interpreted *459 it as having its ordinary legal meaning, which is a “person who occupies a dwelling within” the boundary who manifests “a present intent to remain.” Black’s Law Dictionary 1177 (5th ed. 1979). The Mun-sons have at all relevant times lived within the locality; there is no indication that they have ever planned to leave. The Secretary therefore counted them as residents.
Plaintiffs argue that because the Mun-sons are enrolled in the Village of Eklutna, they are residents of that village, not of Grouse Creek. They cite 43 U.S.C. § 1604(b), which requires the Secretary of the Interior to enroll Natives in the locality where they reside.
Plaintiffs fail to read section 1604 in its entirety. Section 1604 does make residency as of the 1970 census one basis for enrollment, but it provides exceptions. One allows “[t]he Secretary [to] enroll a Native in a different region when necessary to avoid enrolling members of the same family in different regions.... ” 43 U.S.C. § 1604(b). Another provides for the enrollment of Natives who weren’t residents of any of the twelve regions when the roll was prepared. See 43 U.S.C. §§ 1604(b)(l)-(b)(4). Thus, the statute does not equate enrollment with residency, and it certainly does not provide that, once enrolled in a locality, Natives are tied to the land like serfs.[5]
The district court was troubled that the Munsons not only didn’t count for the Grouse Creek group, but actually counted against it. The court thought that the presence of one group of Natives — the Munsons — should not deprive another group of Natives of ANCSA land grants to which they would otherwise be entitled. We disagree. Members of Native groups, no less than anyone else, have the right to reside wherever they please and, while there, to enjoy the rights of citizenship. After a conveyance under ANCSA, the Munsons’ legal rights to use the conveyed land would be eliminated in the same way as the rights of non-Native citizens. Thus, considering the Munsons’ presence the same way we consider the presence of nonNatives is entirely sensible.
Conclusion
Although membership has its privileges, under ANCSA and the applicable regulations, those privileges are carefully circumscribed. We conclude that 43 C.F.R. §§ 2653.6(a)(4), (a)(5), which count only members of the Native group toward the required majority, are a reasonable and sensible interpretation of ANCSA’s definition of Native group, 43 U.S.C. § 1602(d). We also conclude that the Secretary’s interpretation of resident as including alb persons who live in and intend to remain in the region, regardless of their enrollment, is reasonable and consistent with the statutory scheme.
Because the Secretary properly interpreted valid regulations, the judgment of the district court is affirmed in part and reversed in part. The case is remanded for entry of judgment for the defendants. Defendants shall recover their costs.

. The Chugach Alaska Corporation was to receive the subsurface rights.

. Under ANCSA, Natives are enrolled in the region or locality where they resided as of the 1970 census date. 43 U.S.C. §§ 1604(a), (b). The statute also sets forth a complex scheme for the distribution of group benefits and earnings, see 43 U.S.C. §§ 1605-1608, with the end result that the entitlements of Alaska Natives differ depending upon the group, village and region where they are enrolled.

.The issue of the actual boundaries of the region is still unresolved. See pp. 456-57 supra. However, for purposes of this appeal, we have assumed the ALJ’s boundaries to be correct.

. The canon of construction that statutes benefiting Native Americans should be construed liberally in their favor, see Tyonek Native Corp. v. Secretary of the Interior, 836 F.2d 1237, 1239 (9th Cir.1988), is not applicable here. First of all, the canon does not apply when the agency charged with administering the statute is owed deference. See Seldovia Native Ass’n, 904 F.2d at 1342; Haynes, 891 F.2d at 239. Moreover, the question here is not whether to favor Native Americans, but which Native Americans to favor. Only a limited amount of land will be given away; giving land to the Grouse Creek group diminishes the land available for other Native groups. See 43 U.S.C. § 1613(h)(8). Thus, the issue is not whether Native Americans will receive land, but which Native Americans will receive it.

. The record does not disclose why the Munsons are enrolled in the Village of Eklutna, although it seems that Mrs. Munson is from Eklutna and her parents are members. Thus, she may have qualified under the exception that allows Natives to enroll in a location other than that in which they reside if necessary to avoid enrolling members of the same family in different regions. See 43 U.S.C. § 1604(b).