994 F.2d 1441
 61 USLW 2778
 STATE OF IDAHO, DEPARTMENT OF FINANCE, Plaintiff-Appellant,
v.
Robert C. CLARKE, in his capacity as the Comptroller of the
Currency; U.S. Bancorp, an Oregon corporation;
First National Bank, aka U.S. Bank of
Idaho, N.A., Defendants-Appellees.
STATE OF IDAHO, DEPARTMENT OF FINANCE, Petitioner,
v.
FEDERAL RESERVE SYSTEM, Respondent.
U.S. Bancorp, Intervenor.
 Nos. 92-35346, 92-70107.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 6, 1992.
Decided June 4, 1993.
 
 Fred C. Goodenough, Deputy Atty. Gen., Boise, ID, for plaintiff-appellant.
 Jacob M. Lewis, U.S. Dept. of Justice, Washington, DC, for defendants-appellees.
 James N. Westwood, Miller, Nash, Wiener, Hager & Carlsen, Portland, OR, for intervenor.
 Lamont Jones, Jones & Christensen, Pocatello, ID, for amicus-curiae.
 Appeal from the United States District Court for the District of Idaho.
 Before: TANG, PREGERSON, and ALARCON, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 In these cases, the State of Idaho seeks review of two related decisions, one judicial, one administrative. Both appeals concern the efforts of a bank holding company to relocate one of its existing banking subsidiaries from one state to another. The effect of the two decisions which we review is to permit the relocation. We uphold the rulings of both the district court and the Board of Governors of the Federal Reserve System ("Board").I. FACTS
 
 
 2
 U.S. Bancorp is an Oregon-based bank holding company with banking subsidiaries in several western states. Over Idaho's objections, U.S. Bancorp moved one of its Washington state subsidiaries, First National Bank in Spokane ("First National"), to Idaho, where the holding company previously lacked a banking subsidiary. Before relocating First National, two applications were submitted to the federal government, one to the Comptroller of the Currency, and one to the Board. A description of each application follows.
 
 A. Comptroller Application
 
 3
 To relocate, First National applied to the Comptroller pursuant to 12 U.S.C. § 30. This statute required First National, as a national banking association, to obtain the Comptroller's approval before moving its main office. Section 30 authorizes the Comptroller to permit the relocation of a banking association's main office so long as the move is no greater than 30 miles. On its face, the statute permits relocations without regard to state lines.[1]
 
 
 4
 There is no dispute here that First National's move from Spokane, Washington to Coeur d'Alene, Idaho was within the 30 mile limit permitted by section 30. Following submission of First National's application, the Comptroller approved the interstate relocation.
 
 
 5
 Idaho challenged this decision by suing the Comptroller, U.S. Bancorp, and First National in federal district court. In a published decision, the district court dismissed Idaho's case for lack of subject matter jurisdiction. Idaho v. Clarke, 786 F.Supp. 885, 890 (D.Idaho 1992). Relying on Whitney Nat'l Bank v. Bank of New Orleans & Trust Co., 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965), the district court held that Idaho could not attack the Comptroller's decision because the second application submitted to the federal government raised similar issues and judicial review of a decision on the latter application was available in the court of appeals. Clarke, 786 F.Supp. at 888-90. Idaho timely appeals the dismissal of its action against the Comptroller.
 
 B. Board Application
 
 6
 The second application to relocate First National was submitted to the Board by the bank's parent company, U.S. Bancorp. As a bank holding company, many of U.S. Bancorp's activities are regulated by the Bank Holding Company Act of 1956, as amended, 12 U.S.C. §§ 1841-1850 ("BHCA" or "Act"). Pursuant to this statute, the Board promulgated in 1985 a regulation, 12 C.F.R. § 225.144, rescinded 57 Fed.Reg. 9973 (1992), requiring that bank holding companies obtain Board approval to relocate banking subsidiaries into a state other than one in which the parent company is located. U.S. Bancorp filed an application pursuant to this regulation because, as an Oregon bank holding company, it sought to relocate the First National subsidiary into Idaho.[2]
 
 
 7
 Idaho filed an objection to U.S. Bancorp's application and the Board deferred action pending decision in a case before the United States Court of Appeals for the District of Columbia Circuit. That court eventually rendered its opinion in Synovus Fin. Corp. v. Board of Governors, 952 F.2d 426 (D.C.Cir.1991), which substantially curtailed the Board's jurisdiction over interstate subsidiary relocations such as First National's. Following the decision in Synovus, the Board rescinded the regulation pursuant to which U.S. Bancorp had submitted its application. 57 Fed.Reg. 9973 (1992). The Board then notified U.S. Bancorp that its application was unnecessary.
 
 
 8
 To contest the Board's decision, Idaho properly filed a petition for review with this court. See 12 U.S.C. § 1848. In essence, the State argues that the Synovus decision is incorrect. U.S. Bancorp has intervened in the proceeding. Meanwhile, First National has relocated and initiated operations as U.S. Bank of Idaho.
 
 
 9
 * * * * * *
 
 
 10
 These appeals of judicial and administrative decisions have been argued together and we now decide them in one opinion because they are interrelated. We turn our attention first to the Board's decision.
 
 II. REVIEW OF BOARD DECISION
 A. Standard of Review
 
 11
 Upon review of Board decisions, we may "require the Board to take such action with regard to the matter" as we deem proper. 12 U.S.C. § 1848. Normally, however, we "must accord great weight" to the Board's interpretations of the BHCA, although "[t]here is no requirement that the courts must defer to an administrative interpretation when there are compelling indications that the administrative interpretation is wrong." Patagonia Corp. v. Board of Governors, 517 F.2d 803, 812 (9th Cir.1975). Regarding factual matters, the Board's findings, "if supported by substantial evidence, shall be conclusive." 12 U.S.C. § 1848.
 
 
 12
 Where an agency takes a position that is inconsistent with its previous views, the courts may owe less deference to the agency's position. See, e.g., Pauley v. Bethenergy Mines, Inc., --- U.S. ----, ----, 111 S.Ct. 2524, 2535, 115 L.Ed.2d 604 (1991) ("the case for judicial deference is less compelling with respect to agency positions that are inconsistent with previously held views"); Seldovia Native Ass'n v. Lujan, 904 F.2d 1335, 1345 (9th Cir.1990). Nevertheless, if the agency is able to show both that its new position is reasonable and that a reasonable rationale existed for the change, its new position remains entitled to some weight. Id. at 1345-46.
 
 
 13
 By rescinding its relocation regulation, the Board has effectively changed its interpretation of the BHCA. A change in agency interpretation of a statute made to conform with a judicial decision can provide a reasonable rationale for the change. See Flagstaff Medical Ctr. v. Sullivan, 962 F.2d 879, 886-87 (9th Cir.1992). In changing its position regarding the need for approval of interstate subsidiary relocations, the Board pointed to the D.C. Circuit's Synovus decision. 57 Fed.Reg. 9973 (1992), rescinding 12 C.F.R. § 225.144. Relying on Synovus, the Board decided that it would not require "an application for Board approval under the [BHCA] for the relocation of a national bank owned by a bank holding company except in situations in which the Board has found an evasion of the [BHCA]." 57 Fed.Reg. 9973 (1992). Further, in permitting U.S. Bancorp to withdraw its application, the Board stated:
 
 
 14
 After review of the Board's policy statement and the court's decision in Synovus, the Board has determined to rescind its policy statement and not to require the filing of an application for Board approval under the [BHCA] for relocations of national banks except in situations in which the Board has found an evasion of the [BHCA]. Accordingly, the Board has determined that no application is required in this case.
 
 
 15
 In Synovus, the D.C. Circuit limited Board jurisdiction over interstate subsidiary relocations. The court acknowledged the Board's authority to prevent statutory "evasions," see 952 F.2d at 437, but generally concluded that "the Douglas Amendment does not grant the Board authority over relocations," id. at 434. The decision thus provides a reasonable ground not only for the Board's change in position but also for the new position itself such that the agency's current statutory interpretation is entitled to judicial deference. Accordingly, we must abide by the Board's decision dismissing U.S. Bancorp's application unless there are compelling indications that the Synovus decision is wrong or that the Board applied its new interpretation of the BHCA in a manner contrary to law. See Patagonia, 517 F.2d at 812; cf. United States v. Gwaltney, 790 F.2d 1378, 1388 n. 4 (9th Cir.1986) (intercircuit conflicts are to be avoided), cert. denied, 479 U.S. 1104, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987).[3]
 
 B. Relevant BHCA Provisions
 
 16
 Section 3(a) of the BHCA, as amended, 12 U.S.C. § 1842(a), sets forth five actions for which a bank holding company must seek Board approval. Three of these actions are relevant here. First, the holding company must seek approval "for any action to be taken that causes a bank to become a subsidiary of [the] bank holding company." Id. § 1842(a)(2). Second, approval is necessary if a bank holding company wishes to acquire more than a five percent interest in a bank. Id. § 1842(a)(3). Finally, the Board must approve the acquisition by a bank holding company or one of its nonbanking subsidiaries of "all or substantially all of the assets of a bank." Id. § 1842(a)(4).[4]
 
 
 17
 Once an application has been submitted pursuant to section 3(a), section 3(d), known as the Douglas Amendment, 12 U.S.C. § 1842(d), presumptively bars Board approval if it would result in a bank holding company acquiring a banking subsidiary outside the state in which the holding company is located. See Northeast Bancorp, Inc. v. Board of Governors, 472 U.S. 159, 163, 105 S.Ct. 2545, 2548, 86 L.Ed.2d 112 (1985). The statute will permit Board approval in such cases, however, if "the acquisition 'is specifically authorized by the statute laws of the State in which [the] bank [to be acquired] is located, by language to that effect and not merely by implication.' " Id. (quoting 12 U.S.C. § 1842(d)).[5]
 
 
 18
 Unless an application is required under section 3(a), the express terms of the Douglas Amendment--which merely prohibit the approval of certain applications--have no effect. See, e.g., Huston v. Board of Governors, 758 F.2d 275, 279 (8th Cir.1985); Leuthold v. Camp, 273 F.Supp. 695, 702 (D.Mont.1967), aff'd, 405 F.2d 499 (9th Cir.1969). Thus, the parties err in focusing on the Douglas Amendment as determinative of the Board's jurisdiction over U.S. Bancorp's application. For purposes of deciding whether the BHCA expressly confers jurisdiction, the proper inquiry concerns section 3(a). See Synovus, 952 F.2d at 434.
 
 
 19
 Nevertheless, the purpose of the Douglas Amendment remains important even where section 3(a) does not expressly require a Board application. As discussed below, the Douglas Amendment is useful in understanding section 5(b) of the BHCA. Section 5(b) authorizes the Board "to issue such regulations and orders as may be necessary to enable it to administer and carry out the purposes of this chapter and prevent evasions thereof." 12 U.S.C. § 1844(b).
 
 C. The Synovus Decision
 
 20
 The D.C. Circuit considered section 3(a) and 5(b) of the BHCA in the Synovus case. There, an Alabama bank holding company known as SouthTrust Corporation obtained the Board's approval to relocate the main office of one of its Alabama banking subsidiaries into Georgia. 952 F.2d at 428, 430-31. In an effort to block the move, Synovus Financial Corporation, a Georgia bank holding company, petitioned the D.C. Circuit for review of the Board's decision. Id. at 428, 431. SouthTrust intervened and asserted that the Board lacked jurisdiction over interstate subsidiary relocations. Id.
 
 
 21
 Looking to section 3(a) of the BHCA, the D.C. Circuit deemed the statutory language to be "free from ambiguity" and concluded that the Board lacked authority over an application virtually identical to U.S. Bancorp's. Id. at 434. In arriving at this conclusion, the court focused on the three specified events for which section 3(a) requires Board approval: "Each of the transactions described in section 3 involves a bank holding company obtaining control over a subsidiary bank. Nothing in the statute, however, indicates that an 'acquisition' as used in the Douglas Amendment includes the 'relocation' of a subsidiary bank." Synovus, 952 F.2d at 434.
 
 
 22
 In closing the door to Board jurisdiction over interstate relocations, the Synovus court recognized that the Board retained authority under section 5(b) of the BHCA to prevent evasions of the banking statute. Id. at 437. The court concluded, however, that the provision did not apply in Synovus because "the Board's factual findings ... expressly rejected the contention that the relocation was a subterfuge designed to avoid the restrictions of the Douglas Amendment." Id. (quotation omitted).
 
 
 23
 The Synovus court also left open the possibility that the Board could exercise jurisdiction over interstate subsidiary relocations in two other instances: (1) if, at the time the Board approved the initial acquisition of a subsidiary by a bank holding company, the approval contained express relocation conditions; or (2) if, at the time of initial Board approval, the Board's subsequently-rescinded relocation regulation was in effect so as to imply the need for Board approval to relocate. 952 F.2d at 436 n. 7.
 
 D. Discussion
 
 24
 Idaho makes three arguments urging that the Synovus case is wrong and that the Board should assume jurisdiction over interstate subsidiary relocations. The first argument is that section 3(a) of the BHCA, 12 U.S.C. § 1842(a), expressly requires Board approval for U.S. Bancorp to acquire a banking subsidiary in a new state by means of relocating a preexisting, out-of-state subsidiary.
 
 
 25
 Idaho also argues that the Board had authority over U.S. Bancorp's application pursuant to section 5(b) of the BHCA, 12 U.S.C. § 1844(b), in order to prevent an evasion of the Act's purposes.
 
 
 26
 Finally, Idaho refers to the possibility mentioned in Synovus that the rescinded Board regulation might apply to the relocation of banking subsidiaries that were acquired with Board approval while the regulation was in effect.
 
 1. Express Requirements of the BHCA
 
 27
 Section 3(a) of the BHCA requires a bank holding company to apply for Board approval to acquire a subsidiary, or the assets or control of a bank. 12 U.S.C. § 1842(a). Idaho contends that the term "acquire" as used in the statute covers interstate subsidiary relocations. The State reasons that, through such relocations, bank holding companies can acquire something they may not have had before: mainly, a banking subsidiary in the state to which the bank relocates.
 
 
 28
 We are not persuaded, however, that the Synovus court was wrong in holding that the plain meaning of "acquire" does not include interstate subsidiary relocations. The D.C. Circuit reasoned that "acquire" and "acquisition" refer only to obtaining control, and not merely to a change in relatively superficial characteristics such as geographical location. Synovus, 952 F.2d at 434; see also McEnteer v. Clarke, 644 F.Supp. 290, 293 (E.D.Pa.1986) (interstate relocation not an "acquisition"). If "acquisition" meant something besides a change in control, any change in a subsidiary's superficial characteristics could be deemed an "acquisition" requiring Board approval.
 
 
 29
 The conclusion here is bolstered by the fact that the term "bank" as used in the BHCA is not defined with reference to the institution's location. The Act generally does not distinguish among institutions "organized under the laws of the United States, any State of the United States, the District of Columbia, any territory of the United States, Puerto Rico, Guam, American Samoa, or the Virgin Islands." 12 U.S.C. § 1841(c)(1)(B) (defining "bank"). Given that the BHCA does not define "bank" in terms of location, it is difficult to say that a bank holding company makes a legally significant "acquisition" when it moves one of its subsidiaries across state lines.
 
 
 30
 The meaning given to the term "acquire" in Synovus is also reinforced by parallel language in the BHCA referring to "any action ... that causes a bank to become a subsidiary." 12 U.S.C. § 1842(a)(2) (emphasis added). The emphasized language denotes a substantial transformation about which the BHCA is likely to be explicit, yet the statute does not discuss interstate subsidiary relocations. Indeed, the transformation to which the provision here refers is from a "bank" to a "subsidiary," both terms defined in the Act. See id. § 1841(c), (d). The definitions and use of these terms indicate a precise set of circumstances for which Board approval is required. If Congress had intended other events--such as interstate subsidiary relocations--to require approval, it would have said so explicitly.
 
 
 31
 In support of its argument, Idaho cites the Douglas Amendment's reference to acquisitions made "directly or indirectly." See supra note 5 (reciting Douglas Amendment). The State contends that, even if an interstate relocation is not a direct acquisition, it is still an indirect acquisition of a banking subsidiary in the state of relocation. The problem with this argument is that Idaho focuses on the Douglas Amendment and, as we have already stated, the Douglas Amendment cannot apply unless Board jurisdiction is expressly conferred in section 3(a).[6]
 
 
 32
 Section 3(a) does contain language that reflects the Douglas Amendment's use of the adverbs "directly or indirectly." Specifically, section 3(a) requires an application to the Board "for any bank holding company to acquire direct or indirect ownership or control of ... any bank." 12 U.S.C. § 1842(a)(3) (emphasis added). According to Idaho, the word "indirect" appearing in section 3(a)(3) requires an application to relocate a banking subsidiary because interstate relocation amounts to indirect acquisition. We disagree. The adjectives "direct or indirect" modify the nouns "ownership or control," not the verb "to acquire." Thus, the adjectives describe the means by which ownership is held, and not the means by which ownership is acquired. If Congress had intended to modify the verb "to acquire" in the manner suggested by Idaho, Congress would have used the adverbs "indirectly or directly," as it did in the Douglas Amendment. Our reading of section 3(a)(3) is also supported by the fact that elsewhere in section 3(a) the verbs "own or control" are modified by the adverbs "directly or indirectly," while the verb "to acquire" is not modified. See 12 U.S.C. § 1842(a)(3), (4).
 
 
 33
 We conclude that, because First National's relocation did not amount to a change in control exercised over the subsidiary by U.S. Bancorp, the BHCA did not expressly require an application to the Board. In rejecting Idaho's challenge to the Board's interpretation of the BHCA, we need not adopt the reasoning of the Synovus court in its entirety. For example, the D.C. Circuit discussed at length the relationship between the Comptroller's authority under 12 U.S.C. § 30 to approve the relocation of a national banking association's main office, on one hand, and the Board's assertion of authority over interstate subsidiary relocations, on the other. 952 F.2d at 434-36. The Synovus court concluded that, if the Board possessed the authority which it asserted, then it would be able "to override the [Comptroller's] decisions and to resurrect state law." Id. at 435.[7]
 
 
 34
 While these conclusions may accurately predict the practical effect of the Board's regulation of interstate relocations, this does not necessarily require that the Board be excluded from passing on relocations. A conflict between the Comptroller and the Board will only arise when a national banking association applying to the Comptroller to relocate also happens to be a subsidiary of a bank holding company, such that the parent corporation might also have to submit an application to the Board. Even then, the considerations of the two government entities may differ. Compare 12 U.S.C. § 1842(c) (factors considered by Board) with 12 C.F.R. § 5.40 (factors considered by Comptroller). Although the two entities might arrive at different conclusions regarding a proposed relocation, there seems little reason to think that the results will be inherently inconsistent so as to suggest that the Board's involvement is improper.[8]
 
 2. Evasions of the BHCA
 
 35
 Under section 5(b), the Board is authorized to issue orders and regulations necessary to administer and prevent evasions of the BHCA. 12 U.S.C. § 1844(b). Idaho contends that, even if the Act does not expressly require Board approval of interstate subsidiary relocations, such approval is necessary to prevent statutory evasions.
 
 
 36
 Significantly, the Board does not dispute that under section 5(b) it could assume jurisdiction over U.S. Bancorp's application to relocate First National. Instead, it is U.S. Bancorp, as intervenor, that asserts lack of jurisdiction pursuant to the Supreme Court's decision in Board of Governors v. Dimension Fin. Corp., 474 U.S. 361, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986). The Synovus court also concluded that the Dimension decision bars Board jurisdiction over relocation applications. 952 F.2d at 436-37. However, we do not affirm the Board's decision on this basis.
 
 
 37
 In Dimension, the Supreme Court observed that "s 5 only permits the Board to police within the boundaries of the Act; it does not permit the Board to expand its jurisdiction beyond the boundaries established by Congress in § 2(c)." 474 U.S. at 373 n. 6, 106 S.Ct. at 688 n. 6; see also Florida Dep't of Banking and Fin. v. Board of Governors, 800 F.2d 1534, 1536-37 (11th Cir.1986), cert. denied, 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 494 (1987). The Court in Dimension therefore concluded that the Board could not broaden its sphere of influence by promulgating regulations that applied not only to "banks" as defined in section 2(c) of the BHCA, but to other institutions as well. The Board's rulemaking power, concluded the Court, "is limited to adopting regulations to carry into effect the will of Congress as expressed in the statute." Dimension, 474 U.S. at 374, 106 S.Ct. at 689 (footnote omitted).
 
 
 38
 The present case differs from Dimension. Here, the Board has not attempted to regulate interstate subsidiary relocations involving institutions other than those already subject to Board oversight. Instead, regulation of interstate subsidiary relocation under section 5(b) simply "carr[ies] into effect the will of Congress as expressed in the statute." Id. Specifically, Congress's will in passing the BHCA was to limit interstate expansion by bank holding companies. As the Supreme Court observed in Northeast Bancorp:
 
 
 39
 At the time of the BHCA, interstate branch banking was already prohibited by the McFadden Act. 12 U.S.C. § 36(c). The bank holding company device, however, had been created to get around this restriction. A holding company would purchase banks in different localities both within and without a State, and thereby provide the equivalent of [interstate] branch banking. One of the major purposes of the BHCA was to eliminate this loophole.
 
 
 40
 472 U.S. at 169, 105 S.Ct. at 2551 (emphasis added).
 
 
 41
 Senator Douglas himself made clear that the intended effect of his amendment would be to permit only intrastate expansion of bank holding companies unless interstate expansion was permitted by the state into which the bank holding company wished to grow:
 
 
 42
 Even with my amendment, the Federal Reserve Board would still have final jurisdiction over the acquisition of banks or bank holding companies within a given State, that is, intrastate acquisitions. If and when individual States permitted a bank holding company from another State to acquire assets across State lines, then the Federal Reserve Board would have final jurisdiction in those cases as well.
 
 
 43
 ....
 
 
 44
 ... [Thus, it would] still [be] possible to have an expansion of a bank-holding company within its home State, if it musters the approval of the Federal Reserve Board. Moreover, if State law permits, and if approved by the Board, interstate acquisitions are possible.
 
 
 45
 102 Cong.Rec. 6860 (1956). Although one might take issue with the senator's choice of the word "acquisition," as opposed to "relocation," Senator Douglas made clear that he was speaking broadly. Pursuant to his amendment, he explained that "any future expansion of bank holding companies, including the purchase of additional banks, will be permitted only if the Federal Reserve Board gives its permission." Id. Furthermore, because at the time Congress debated the BHCA no state permitted interstate expansion of bank holding companies, Senator Douglas remarked that his amendment's "immediate practical effect would be to bar the expansion of bank holding companies across State lines." Id.[9]
 
 
 46
 In Lewis v. BT Inv. Managers, Inc., 447 U.S. 27, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980), the Supreme Court aptly summarized the foregoing remarks of Senator Douglas:
 
 
 47
 He argued that such an amendment was desirable in order to ensure that national banks would not use bank holding companies as mechanisms to evade state-law restrictions on [interstate] branching of banks recognized and made applicable to national banks by the McFadden Act....
 
 
 48
 Id. at 47, 100 S.Ct. at 2021 (emphasis added). Indeed, the Court went so far as to note that the BHCA "establishes a general federal prohibition on the acquisition or expansion of banking subsidiaries across state lines." Id. (emphasis added).[10]
 
 
 49
 Congress's will that banking operations not be permitted to cross state lines unless the states themselves permit such expansion is evident. The purpose of the Douglas Amendment was to ensure that state approval exists for actions enumerated in section 3(a) of the BHCA. But the fact that other actions resulting in interstate expansion are not set out in section 3(a) does not preclude Board jurisdiction under section 5(b) to ensure that the state into which a bank holding company wishes to expand has approved the expansion. The Supreme Court's decision in Dimension does not indicate otherwise. Thus, while the Board cannot ignore legal differences established by Congress, it can look beyond the form of transactions in preventing evasions of the BHCA. See First Bancorporation v. Board of Governors, 728 F.2d 434, 436 (10th Cir.1984).
 
 
 50
 Accordingly, we reject U.S. Bancorp's argument that the Board is completely lacking in power over interstate subsidiary relocations. The BHCA is generally concerned with bank holding companies moving across state lines. Therefore, the Board should be free to regulate such activity, even if the BHCA does not explicitly require Board approval for the specific transaction involved. To define the Board's authority under section 5(b) as being limited strictly to the actions expressly described by the BHCA would render section 5(b) superfluous.[11]
 
 
 51
 Given the Board's power over interstate subsidiary relocations, we must consider Idaho's argument that the Board should have assumed jurisdiction over U.S. Bancorp's application to prevent an evasion of the BHCA. The Board responds that Idaho targets an unreviewable exercise of agency discretion "not to prosecute or enforce." See, e.g., Big Country Foods, Inc. v. Board of Educ., 952 F.2d 1173, 1176 (9th Cir.1992). We agree. Upon review of the BHCA and its history, we are satisfied that in the present case Congress did not intend to limit the Board's enforcement discretion. See id. We therefore decline to review the Board's decision permitting U.S. Bancorp to withdraw its relocation application.[12]
 
 3. Other Bases for Board Jurisdiction
 
 52
 Finally, Idaho alludes to an argument suggested by the Synovus court. Specifically, the D.C. Circuit indicated that, if the banking subsidiary to be relocated was previously acquired by a bank holding company while the Board's relocation regulation was in effect, then approval of the original acquisition might be "subject to the 'conditions' set forth in 12 C.F.R. § 225.144." Synovus, 952 F.2d at 436 n. 7. The import of this statement is that the Board might be able to require another application upon any attempt to relocate such subsidiaries across state lines.
 
 
 53
 As it happens, U.S. Bancorp acquired First National while the Board's relocation regulation was in effect. However, contrary to Idaho's assertion, this fact alone is not sufficient to distinguish Synovus. Furthermore, nothing in the Synovus court's suggested basis for Board jurisdiction compels the Board to assume jurisdiction, and so the D.C. Circuit's suggestion is of little use to Idaho.
 
 
 54
 * * * * * *We conclude that the BHCA does not expressly require Board approval of interstate subsidiary relocations. Further, the Board's discretionary decision allowing U.S. Bancorp to withdraw its application is not reviewable. Finally, Idaho cannot challenge the relocation in this court based on the fact that the Board's relocation regulation was in effect when U.S. Bancorp originally acquired First National. Accordingly, the State's petition for review of the Board's decision will be denied.
 
 III. REVIEW OF DISTRICT COURT DECISION
 
 55
 We turn now to Idaho's appeal from the district court's dismissal of the State's action against the Comptroller. The court dismissed the case for lack of subject matter jurisdiction. Our review is therefore de novo. See, e.g., Persons v. United States, 925 F.2d 292, 294 (9th Cir.1991).
 
 
 56
 The essence of Idaho's claim against the Comptroller is stated in the complaint as follows:
 
 
 57
 The decision of the Comptroller approving the application of Bancorp's subsidiary [First National] to relocate its main office in Idaho is in conflict with the mandates of both federal and state statutes in that the approval would permit the expansion of Bancorp into the State of Idaho without the express statutory authorization for such expansion into this state, as required by the Douglas Amendment to the [BHCA], 12 U.S.C. § 1842(d).
 
 
 58
 Looking to this allegation, the district court reasoned that, because it would be necessary to consider the Board's decision regarding U.S. Bancorp's application, the only proper forum for the State's action would be the court of appeals, pursuant to a petition for review of the Board's decision. 786 F.Supp. at 888-90. Specifically, the district court stated that, before it could consider the conflicts of laws alleged by Idaho, "it would first have to interpret what is 'required' by the [BHCA]'s Douglas Amendment." Id. at 889. Relying on Whitney Nat'l Bank v. Bank of New Orleans & Trust Co., 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965), the district court concluded that it could not "make this determination because the [BHCA] vests original jurisdiction with the Federal Reserve Board and limits judicial review of the Board's decisions to the court of appeals." 786 F.Supp. at 889.
 
 
 59
 In Whitney, the Whitney National Bank in New Orleans sought to do business in a neighboring parish of Louisiana. However, state law effectively prohibited national banks in one Louisiana parish from branching into other parishes. Whitney therefore planned to create a bank holding company which would hold both Whitney (actually, Whitney's corporate successor) as well as a second, new national bank to be located in the neighboring parish. 379 U.S. at 413, 415-16, 85 S.Ct. at 554, 555. The Comptroller's authorization was necessary for the new national bank to do business, while Board approval was necessary for, among other things, the new bank holding company to acquire the new national bank. Id. at 417, 85 S.Ct. at 556.
 
 
 60
 The Comptroller gave preliminary approval, subject to the action of the Board. Id. at 416, 85 S.Ct. at 555. Seven months later, the Board gave its approval. Id. at 413, 85 S.Ct. at 554. The following month, two banking competitors of Whitney filed an action in district court against the Comptroller "seeking a declaration that the Comptroller of the Currency had no power to grant the necessary authority and praying in addition for injunctive relief restraining him from issuing a certificate of authority for the new bank." Id. Eventually, the Whitney competitors also filed a petition for review of the Board's decision with the Fifth Circuit. Id.
 
 
 61
 The Supreme Court concluded that the federal courts lacked jurisdiction over the action against the Comptroller. 379 U.S. at 414, 423, 85 S.Ct. at 554, 559. Generally, the Court was concerned with the integrity of the statutory procedure whereby review of Board decisions could be obtained in the courts of appeals. See id. at 421-22, 85 S.Ct. at 558 ("we reject the notion that the Board's determination may be collaterally attacked in the District Court by a suit against the Comptroller").
 
 
 62
 It is not clear from Whitney that every overlap in the jurisdictions of the Comptroller and the Board will automatically bar direct judicial review of the Comptroller's decision. However, we need not decide the precise scope of Whitney. See American Ins. Ass'n v. Clarke, 865 F.2d 278, 288 (D.C.Cir.1988) (similarly declining to define Whitney's limits). For our purposes, it is sufficient that the Seventh Circuit has previously applied Whitney to a situation substantially similar to the present one.
 
 
 63
 In Marshall & Ilsley Corp. v. Heimann, 652 F.2d 685 (7th Cir.1981), cert. denied, 455 U.S. 981, 102 S.Ct. 1489, 71 L.Ed.2d 691 (1982), the Comptroller approved the acquisition of one Wisconsin bank, Midland National, by another Wisconsin institution, First Bank. Three banking competitors sued the Comptroller and argued that Midland had actually been acquired by First Bank's parent, First Bank System. Id. 652 F.2d at 688. Because First Bank System was an out-of-state bank holding company, plaintiffs argued that "the purported acquisition of Midland by First Bank was ... a sham perpetrated by First Bank System in order to evade the prohibitions of 12 U.S.C. § 1842(d)." Id. 652 F.2d at 699 (footnote omitted). Looking to Whitney, the Seventh Circuit concluded that alleged violations of the BHCA were for the Board to consider in the first instance, and for the courts of appeals to review. Id. at 700-01. The Marshall court therefore upheld dismissal of the plaintiffs' action against the Comptroller. Id. at 702.
 
 
 64
 Similarly, Idaho's complaint alleges that the Comptroller violated the Douglas Amendment in approving the relocation of First National. Although the State's brief on appeal also challenges the Comptroller's authority to approve interstate relocations under 12 U.S.C. § 30, Idaho made clear at oral argument that the Douglas Amendment, and not section 30, lies at the heart of its challenge to the Comptroller's decision:
 
 
 65
 We do not have a problem with certain relocations.... We don't have a problem with a national bank if what is called in the industry a unit bank--that is, one that is owned by shareholders, is not owned by a holding company, one that has no branches but is merely a one office bank--if it wants to move across a border, across a river that contains a border, as happened in the Synovus case, we wouldn't have a problem with that.... The State does have a problem when--and we feel the Douglas Amendment covers this--when a ... multi-state holding company as we have here decides that because it's having difficulty entering the State, we'll just play this shell game and [move] one of our surplus subsidiaries ... across the state line in order to get around state law.
 
 
 66
 In Marshall, the court held that an allegation of a sham transaction evading the Douglas Amendment cannot be raised in a lawsuit against the Comptroller. Following the Seventh Circuit, we hold Idaho's claim that U.S. Bancorp is running a "shell game" in contravention of the Douglas Amendment to be a matter for the Board, not the Comptroller. The fact that we do not review the Board's refusal to assume jurisdiction over U.S. Bancorp's application does not save Idaho's action against the Comptroller. See Marshall, 652 F.2d at 700 n. 24; see also supra note 12. In sum, the district court did not err in relying on Whitney to dismiss Idaho's case against the Comptroller and the other defendants.
 
 IV. CONCLUSION
 
 67
 In No. 92-70107, Idaho's petition for review of the Board's decision is DENIED.
 
 
 68
 In No. 92-35346, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 Section 30 reads in relevant part:
 Any national banking association ... may change the location of its main office ... upon receipt of a certificate of approval from the Comptroller of the Currency[ ] to any ... location within or outside the limits of the city, town, or village in which it is located, but not more than thirty miles beyond such limits.
 12 U.S.C. § 30(b).
 
 
 [2]
 The rescinded regulation states in relevant part: "[A] bank holding company's authority to continue to control a bank is limited by the requirements of the Douglas Amendment such that the bank must remain in the state in which it was located at the time the Board granted approval for its acquisition." 12 C.F.R. § 225.144(d) (rescinded). Furthermore, "a bank holding company may not, without the Board's prior approval under the [Bank Holding Company] Act and compliance with the state authorization provisions of the Douglas Amendment, take action that would cause it to control a bank outside of [the holding company's] home state." Id
 
 
 [3]
 We do not arrive at this conclusion without some skepticism, however. Although the Board cites the Synovus decision as the basis for its change in position, there are indications that the Board began to shift its position even before the Synovus decision was issued. See Synovus, 952 F.2d at 429, 431 & n. 4 (after asserting jurisdiction over a relocation application, the Board declined to file a supplementary brief on the question of its jurisdiction and instead acquiesced in a Justice Department brief undermining Board authority); see also id. at 439 (Silberman, J., dissenting). However, the Board has since formally adopted the Synovus decision as the agency's interpretation of the Act, and we find no compelling reason not to defer to this subsequent decision
 
 
 [4]
 Other actions also require an application to the Board, see 12 U.S.C. § 1842(a)(1), (5), but these situations are not implicated here. See Synovus, 952 F.2d at 434 (enumerating three relevant provisions)
 
 
 [5]
 The Douglas Amendment states in relevant part:
 [N]o application ... shall be approved under this section which will permit any bank holding company ... to acquire, directly or indirectly, ... any additional bank located outside of the State in which the [bank holding company is located] unless the acquisition ... is specifically authorized by the statute laws of the State in which such bank is located, by language to that effect and not merely by implication.
 12 U.S.C. § 1842(d). There is no dispute here that under the Douglas Amendment Idaho law would bar the Board from approving U.S. Bancorp's relocation application, assuming that a Board application is necessary to relocate across state lines and that the Douglas Amendment pertains to such applications.
 
 
 [6]
 Furthermore, even if an application is required under section 3(a), there is some dispute whether the Douglas Amendment would apply in deciding whether to approve a relocation application. Specifically, U.S. Bancorp contends that a relocation would not involve the acquisition of an "additional" bank to which the Douglas Amendment speaks. See supra note 5 (reciting Douglas Amendment). We need not decide this issue
 
 
 [7]
 In discussing section 30, the Synovus court frequently referred to the provision as part of the McFadden Act. 952 F.2d at 428, 434, 435 n. 436
 The McFadden Act, which regulates national banking associations, preceded the BHCA. The BHCA was passed to prevent the use of holding companies to circumvent the strictures of the McFadden Act. Hence, the McFadden Act is relevant in explicating the BHCA. See, e.g., Northeast Bancorp, 472 U.S. at 169-72. However, as Idaho points out, the McFadden Act, ch. 191, 44 Stat. 1224 (1927) (codified in scattered sections of 12 U.S.C.), did not include the statute now codified at 12 U.S.C. § 30.
 
 
 [8]
 Indeed, an effort should be made to harmonize overlapping functions of the Comptroller and the Board, given that Congress has identified and resolved certain conflicts between the jurisdictions of the two entities. See Marshall & Ilsley Corp. v. Heimann, 652 F.2d 685, 699 n. 23 (7th Cir.1981), cert. denied, 455 U.S. 981, 102 S.Ct. 1489, 71 L.Ed.2d 691 (1982)
 
 
 [9]
 Contrary to the assertions of U.S. Bancorp, Senator Douglas's remarks are highly pertinent to understanding Congress's will in passing the BHCA. See Northeast Bancorp, 472 U.S. at 169-70, 105 S.Ct. at 2551-52 (comments of individual legislators "carry substantial weight" where legislation is proposed during floor debate)
 
 
 [10]
 Curiously, U.S. Bancorp also cites BT Investment in support of its position that the Board lacks jurisdiction over interstate relocations. In BT Investment, the Court ruled that the Douglas Amendment did not authorize states to burden interstate commerce excessively by preventing the entry of investment management subsidiaries controlled by out-of-state holding companies. 447 U.S. at 47, 100 S.Ct. at 2021. In so holding, the Court noted that "the structure of the [BHCA] reveals that § 3(d) applies only to holding company acquisitions of banks." Id. (emphasis added). The implication is that the Board cannot deny under the Douglas Amendment a bank holding company's application to relocate across state lines an investment management subsidiary, as opposed to a banking subsidiary. Thus, like the Dimension case, BT Investment disapproved Board regulation of entities not subject to the BHCA. Because U.S. Bancorp and its control of First National are subject to the BHCA, BT Investment and Dimension are both distinguishable from the present case
 
 
 [11]
 The Synovus court recognized as much in not completely foreclosing Board jurisdiction under section 5(b) over interstate subsidiary relocations. See 952 F.2d at 437; see also id. at 445 (Silberman, J., dissenting) (absence of subjective intent to evade BHCA "does not foreclose the Board from determining that relocations for some period after approval of an acquisition are, by law, evasions of the Douglas Amendment")
 
 
 [12]
 Of course, when the Board asserts jurisdiction and makes an express finding of evasion or nonevasion, the finding remains subject to review in the courts of appeals. See 12 U.S.C. § 1848. Furthermore, the courts of appeals may have jurisdiction to review the Board's "simple statement of the grounds for [its] action" on applications seeking a Board determination on whether a particular event amounts to an evasion of the BHCA. See 12 C.F.R. § 262.3(a), (g); see also id. § 262.3(i)(3) (referring to "Governmental agencies" as properly interested persons in related context); Marshall, 652 F.2d at 700 n. 24 (indicating that the Board permits competitors to petition for "a formal ruling on an allegation that a bank or bank holding company is violating the BHCA")